Carr, J.
The sole question presented to the court, is, Whether, under the words of the will, the children of William Crow deceased, will take per capita, equal shares with Thomas, Moses and John, the children of the testator, or per stirpes, the share of their father, as the children of Mrs. Jones and Mrs. Crane take ?
In the construction of wills, I think it very often happens, that we, in the first place, make- up an opinion as to what the testator ought in justice to have done; that is, what we would in such a case have done; and then endeavour to find out reasons shewing that what he ought to have done, he has done. It was by this process (I rather think) that, on *77 the argument of this cause, l took up a pretty strong ini- . . . .. r i • , pression against the appellants. It seemed to me not right, that the grand-children by one son, should receive more than the other grand-children, and equal shares with the children of the testator; and, therefore, I concluded, that such was not the meaning of the will. But this is surely a very erroneous process; for the testator having a perfect right to the property, his will is the sole law: we are to inquire what that will is: and in this inquiry, what we think it ought to be, should not have the least influence. The reasons, the calculations, the feelings, the whims even, which may have influenced the testator are inscrutable to us: his words are the only safe guides to conduct us to his meaning.
In the case before us, it seems to me, that the plain natural meaning of the words, and the rules drawn from the cases, lead us to the same conclusion. The cases all lay it down, that where a legacy is to several, whatever may be their relations to each other, or however the statute of distributions might operate upon such relations, equality shall be the rule, unless the testator has established a different one. Thus, to A. and It. and the children of C. all take per capita: lo A. B. and C. and their children; all living at the testator’s death take equally. So, to the descendants of A. and B., all their descendants, children, grand-children &c. take per capita. Richardson v. Spraag, 1 P. Wms. 434. Blackler v. Webb, 2 P. Wms. 383. Eccard v. Brooke, 2 Cox, 213. Butler v. Stratton, 3 Bro. C. C. 367. Weld v. Bradbury, 2 Vern. 705. Northey v. Strange, 1 P. Wms. 340. Wicker v. Milford, Harg. law tracts, 513. Malcolm v. Martin, 3 Bro. C. C. 50. Phillips v. Garth, Id. 64. Davenport v. Hanbury, 3 Vez. 257. Freeman v. Parsley, Id. 421.
Look now at the words of the will: “ the balance of slaves to he equally divided between my children, to wit, the heirs of William Crow, namely (enumerating his son W. C’s children), Thomas, Moses, John Crow (children of testator), and the children of my deceased daughter Massey Jones, and the children of my deceased daughter Sarah Crane.” *78 Now, suppose the testator had stopped here: could there' be any doubt, that each of his children and grand-childrén, named or described, would take equally, per capital He first establishes equality as the rule of partition; and then enumerates, as the takers, ten persons by name, seven of whom he calls the heirs of William, Crow, three his own children; and then he describes, as takers, the children of his two deceased daughters. It does not seem possible to raise a doubt, that if the testator had stopped here, all the children and grand-children, who were the objects of his bounty, must have taken equally. And of this he himself was well aware; for he adds, “ but the children of my daughter Massey Jones, are to take only such part as then-mother would take, if she were still alive, that is to say, a child’s part; and in like manner, the children of my daughter Sarah Crane, are to take only such part as their mother would take, if she were still alive, that is to say, a child’s part.” Now, this is a clear and distinct exception: and it shews two things: 1. that the testator knew, that under the former part of the clause, all the objects of it would take per capita: 2. that he did not intend, that all should so take. He, therefore, excepts from its operation, those who were to take by a different rule, namely, per stirpes; and these were the children of his two daughters. This seems to me to give tenfold strength to the claim of William, Crow’s children to take in their own right, per capita. However clearly in favour of that claim the first part of that clause may be, it might, (but for the exception) have been doubted, whether the testator so understood it: but that is impossible now: he has given his own explanation. Knowing, then, that by the operation of the first words, his daughters’ children (whom he had only described generally as children) would take equally, and a fortiori, that William Crow’s children (each of whom he had individually named) would so take; when he excepts the children of his daughters, and leaves the children of William to the unrestrained operation of the clause, the conclusion, that these last were intended to take *79 equally, is precisely as strong as that the others were to take by a different rule.
Nor is this conclusion at all weakened, in my mind, by the testator’s calling them William Crow’s heirs. He knew nothing of the technical distinction between children and heirs. He shews that he uses them in the same sense: for he says, “ the heirs of William Crow namely, William &c. meaning his children.” And in another part of the will, speaking of his daughter Whooston, he says, that what he has given to her shall return to his estate &c. if she shall die without a living heir.
But it was said, the words “a child’s part,” used in this clause, are strong to shew, that the testator meant, that this residuum should be divided into six parts, and consequently, that William’s children should come in per stirpes only. I cannot see it in that light. By “ a child’s part,” did the testator mean a part to be ascertained, by taking the whole number of his children, living and dead, as the divisor ? This would seem the natural sense. But this would give eight as the divisor; for he had had four sons and four daughters: but this is not contended for. Did he mean all his living children ? No! for one of them is confessedly excluded from this legacy, and the children of three deceased children included. The truth is, that by child’s part, he did not mean at all to designate the number of portions, or the manner of taking: for the general purpose of the clause, he had already done this; and the whole purpose of this part of the clause, was to except the children of his daughters, and establish for them a mode of taking, different from that of his three sons and the children of William. In doing this, he says, they are to take only such part, as their mother would take, if she was still alive, that is to say, a child’s part; meaning, simply, to place them in the shoes of their mother, that they should take whatever part she as a child would have taken, without intending to designate either the amount of that part, or its proportion to the whole.
*80 I am of opinion, that appellants take per capita; that the personalty subject to this clause, should be divided into twelve parts, of which the appellants should take seven, one each; the three sons, one each'; the children of Mrs. Jones one, and the children of Mrs. Crane one.
Green, J.
said, that he inclined very strongly to the opinion, that the decree of the courts below was right, but the opinion of the other judges to the contrary was so clear and decided, that he surrendered his own.
The other judges, concurring with Carr, J. the decree was reversed.