Joynes, J.
'The only question in this case relates to the construction of the following clause in the will of Sally W. Griffith: “ All my landed estate in the county of Westmoreland, in the State of Virginia, to be equally divided *577 between my nephew E. Colville Griffith, and the children of Dr. W. W- Hoxton and Eliza L. Hoxton, namely: Llewellyn G. Hoxton, Sally G. Hoxton, William Hoxton, Mary S. Hoxton and Winslow S. Hoxton.” Mrs. Hoxton was the sister of E. Colville Griffith, and both she and her husband were deád at the date of the will. E. Col-ville Griffith died after the date of the will, and before the death of the testatrix; and by the last clause of the will, which made provision for that event, the property given to E. Colville Griffith passed to his children, Frederick, Eleanor and David, who filed the bill in this case. The bill claimed, that the land in 'Westmoreland was to be divided per stirpes, the plaintiffs taking one moiety, and the children of Mrs. Hoxton, who were made defendants, taking the other moiety. The defendants contended, that the land was to be divided among the original parties per capita, the plaintiffs, among them, taking one-sixth part, and each of the five children of Mrs. Hoxton taking one-sixth part. The Circuit Court held, that the division should be made per capita, as contended by the defendants. The District Court reversed the decree of the Circuit Court, and held, that the division should be made per stirpes, as contended by the plaintiffs.
Where a bequest' is made to several persons, in general terms indicating that they aré to take equally as tenants in common, each individual will of course take the same share; in other words, the legatees will take per capita. The same rule applies where a bequest is to one who is living, and to the children of another who is dead, whatever may be the relations of the parties to each other, or however the statute of distributions might operate upon those relations in case of intestacy. Thus, where property is given “ to my brother A, and to the children of my brother B,” A takes a share only equal to that of each of the children of B. So where the gift is to A’s and B’s *578 children, or to the children of A and the children of B, the children take as individuals, per capita. The substance of this rule of construction is, that, in the absence of explanation, the children in such a case are presumed to be referred to as individuals, and not as a class, and that the relations existing between the parties, and the operation which the statute would have upon those relations in case of intestacy, are not sufficient to control this presumption. The general rule is well established, and has been fully recognized by the decisions of this court. Brewer & ux v. Opie, 1 Call 212; Crow v. Crow, 1 Leigh 74; McMasters v. McMasters' ex'ors, 10 Gratt. 275.
But this rule is not inflexible, and it will yield to the cardinal rule of construction which requires that effect shall be given to the intention of the testator, to be collected from the whole will. If, therefore, an intention can be collected from the will that the children of the deceased parent are to take as a class, that intention will prevail. The general rule above referred to rests, indeed, upon a very slender foundation, and Jarman says that it “ will yield to a very faint glimpse of a contrary intention in the context.” 2 Jarman on Wills, Ed. 1861, 182. “ Thus,” he adds, “ the mere fact that the annual income, until the distribution of the capital, is applicable per stirpes, has been held to constitute a sufficient ground for presuming that a like principle was to govern the gift of the capital.”
The foregoing remark of Jarman is illustrated and confirmed by cases in this country. In Hamlett v. Hamlett’s ex'or, 12 Leigh 350, the testator gave the residue of his estate to be “ equally divided among James Hamlett, Mary Jeffress, Patsy Wilson, Haney Jeffress, Harcissa Jeffress, [all of whom were children of the testator,] the children of my son George Hamlett and Lucy his wife, the children of my daughter Elizabeth Arnett, the children of my son Bedford Hamlett, deceased, and the children of my *579 daughter Obedience.” The court held, that the property must be divided per stirpes, each family of grand-children taking one-ninth part. In Gilliam v. Underwood, 3 Jones Eq. R. 100, the testator gave the residue of his estate to be “equally divided between my daughter Lucy, my son John’s children, and my son Berry Underwood.” The court held, that John’s children took as a class one third part of the residue, because in another part of the will they had a legacy given to them as a class. The court acted on a like ground in Lockhart v. Lockhart, 3 Jones Eq. R. 205. In Alden v. Beall, 11 Gill & John. R. 123, the testator gave the residue of his estate as follows: “ The residue of my estate, real and personal, to be equally divided between the children of my sister Ann Latimer, and their heirs forever, and the children of my sister Penelope Beall, and their heirs forever.” The court held, on the construction of this clause alone, without aid from the context, that the residue should be divided equally between the two families. In Lackland’s heirs v. Downing’s ex’or, 11 B. Mon. R. 32, the testator gave the residue of his estate in the following terms: “All the residue” “I desire may be equally divided after my death between my brother John Downing, my two sisters, Elizabeth Cannon and Nancy Gibson, and the children of sister Nelly Lack-land, to them and their children forever, it being my desire that the portions allotted to my brother John and my two sisters and the children of my deceased sister shall be made as nearly equal as possible, both in kind and amount.” The court held, on the construction of this clause alone, that the residue was to be divided per stirpes; the children of Nelly Lackland taking together, as a class, one-fourth part. In Fissel’s Appeal, 27 Pennsyl. R. 55, the testatrix directed her real and personal estate to be “ equally divided between the children of my brother John, deceased, the children or heirs of my sister Rosanna, *580 deceased, and the children or heirs of my sister Juliana, deceased, and my brother John, or his heirs or legal representatives.” It was held, that the children referred to took per stirpes, and not per capita.
E. Colville Griffith and Mrs. Hoxton were related to the testatrix in the same degree. They had both lived with her during their minority, and, as alleged in the bill and admitted in the answer, “ they were regarded by her with like affection.” We naturally expect, therefore, to find that, in the disposition of her property, she has sought to effect equality between these equal objects of her affection, bestowing upon the children of Mrs. Hoxton what was intended for her. And I think that the will contains satisfactory evidence that, in the clause on which this case depends, the children of Mrs. Hoxton, though enumerated as individuals, were designed to take as a class, representing their mother.
The will provides, in the clause next to the last, that “ should any of the children of Doctor and Eliza Hoxton die without heirs, the property left them shall be divided among the survivors.” The next and last clause provides, that if the testatrix shall survive E. Colville Griffith, “ the property left him shall be divided between his three children, Frederick, Eleanor and David.” These clauses indicate clearly the purpose of the testatrix to distinguish the objects of her bounty into two classes—the children of her deceased niece being one class, and her nephew (or, in case of his death, his children,) being the other. Under the latter clause, on the death of E. Colville Griffith in the lifetime of the testatrix, his children, who are substituted in his place, are not to take equally with the Hoxtons, who stand in equal degree with them, but they are to divide among themselves the share of their father. They are treated as a class representing their father, and taking among them what was intended for him, if he had *581 lived to take it. It is reasonable to presume that she intended to treat both families alike, and that she regarded the Hoxtons likewise as a class, taking what their mother would have taken if alive. All ambiguous expressions should be construed in conformity with this presumption.
By the former of the two clauses just quoted, the testatrix provides, in general terms, for the death of any of the Hoxton’s “ without heirs.” This provision seems to have had reference to the death of any of the members of this family in the lifetime of the testatrix, as the next provision has reference expressly to the death of E. Colville Griffith in her lifetime. If so, the effect of it is, that by the death of any of the Hoxtons in the lifetime of the testatrix, the share of E. Colville Griffith would not be increased; he would still take his share, whatever it was, and the surviving Hoxtons would take what was intended for that family. If equality between her nephew, on the one hand, and the family of her niece on the other, was the purpose of the testatrix, this provision was a natural and reasonable one, and preserved this equality. If individual equality between E. Colville Griffith and the several children of Mrs. Hoxton was the object, then this provision was unreasonable and unjust. It violated- the rule of equality among the individuals, in case of the death of any of the Hoxtons, by giving the share of the deceased to the surviving Hoxtons, in exclusion of E. Colville Griffith.
Another clause of the will provides, that if a claim of the testatrix on the government for certain property destroyed should be recovered, it should be equally divided between E. Colville Griffith and the “ surviving children” of Mrs. Hoxton. In the next preceding clause, the “ children” of Mrs. Hoxton are spoken of in general terms, and are enumerated by name. The word “ surviving ” seems to have had reference to the time at which the claim should be recovered. If so, the provision is consistent with the *582 rule of equality, if equality between classes or families was intended. If equality among individuals was intended, this provision is capricious and unjust, because it makes the share of E. Colville Griffith depend upon the number of the Hoxtons who may be surviving when the claim is recovered.
I am of opinion to affirm the decree of the District Court.
The other judges concurred in the opinion of Joynes, J„
Decree oe the Distrit Court aeeirmed.