## Richmond.

### WALKER & OTHERS v. WEBSTER & OTHERS.

DECEMBER 2, 1897.

1. WILLS—*Construction—Case at Bar—Per Stirpes or Per Capita.*—A will contains the following residuary clause: "All the rest and residue of my estate, real, personal and mixed, I desire shall go to and be divided in equal parts among those who would be my heirs at law under the statute of descents and distributions in Virginia, in case I had died intestate.

    Held: The heirs take *per capita,* and not *per stirpes.*

2. WILLS—*Construction—Effect to be given to the Words Used.*—The prime object in construing a will is to ascertain the intention of the testator. This intention is to be gathered from the language of the will itself, as far as possible, and effect should be given to every word of the will, if any sensible meaning can be assigned to it, not inconsistent with the general intent apparent on the whole will taken together.

Appeal from a decree of the Chancery Court of the city of Richmond pronounced December 2, 1895, in a suit in chancery wherein Elizabeth Webster was the complainant, and other heirs of Churchill Doggett, and his widow, were the defendants.

*Reversed.*

The widow of Churchill Doggett renounced the provision made for her by the will of her husband, and this suit was instituted by his daughter, Elizabeth Webster, for the purpose of having dower assigned to his widow, and partition of the residue of his real estate. In the progress of the suit it became necessary to refer the cause to a commissioner to settle the account of the executrix of the estate of Churchill Doggett, and also to make certain inquiries. Amongst the inquiries was one to ascer-

tain who were the heirs of Churchill Doggett, deceased, and in what proportion they were entitled to the residuum of his estate. In response to this inquiry, the commissioner reported that the heirs were two sisters, a niece, and three great nieces, naming them, and that they took the residuum *per capita.* To this report the two sisters excepted, and the court sustained their exception. From the decree sustaining said exception this appeal was taken.

*Sol Cutchins* and *Leake & Carter,* for the appellants.

*Meredith & Cocke* and *J. R. V. Daniel,* for the appellees.

RIELY, J., delivered the opinion of the court.

The whole controversy in this case is as to the proper construction of the third clause of the will of the testator, Churchill Doggett, which is in the following words:

"All the rest and residue of my estate, real, personal, and mixed, I desire shall go to, and be divided in equal parts, among those who would be my heirs at law, under the statute of descents and distributions in Virginia, in case I had died intestate."

The Chancery Court decided that the heirs at law of the testator took the estate given by the above clause *per stirpes,* and not *per capita.*

Wills are to be construed according to the intention of the testator. This is the cardinal rule. And when the court is satisfied as to his intention, it must give effect to it, no matter what may be the disposition he has made of his property, unless it violates some rule of law. We are not to be influenced in the least in the interpretation of the will by what we may think the testator ought in justice to have done. Having a perfect right to the property, his will is the sole law of its disposition.

The first object of the judicial expositor is, therefore, to ascer-

tain the intention of the testator. While extrinsic evidence may
be resorted to for the purpose of showing all the circumstances
surrounding the testator at the time of making his will, his
situation, the state of his family, and of his property, and any
facts known to him which may reasonably be supposed to have
influenced him in the disposition of his property, and thereby
place the expositor, as near as possible, in the situation of the
person whose language he is called on to interpret, he must,
nevertheless, under the light of the extrinsic facts, ascertain the
intention of the testator from the words of the will itself. And
in thus ascertaining the intention, effect must be given to every
word of the will, if any sensible meaning can be assigned to it,
not inconsistent with the general intention apparent on the
whole will take together. Words are not to be changed or re-
jected unless they manifestly conflict with the plain intention of
the testator, or unless they are absurd, unintelligible, · or un-
meaning, for want of any subject to which they may be applied.
*Wootten* v. *Reed*, 12 Gratt. 196.

Guided by these simple rules, the intention of the testator,
as disclosed in the clause of his will, which has given rise to this
controversy, seems to us free from doubt. He has used apt
and precise words to describe the objects of his bounty. They are
those persons who would be his heirs at law under the Virginia
statute of descents and distributions, if he had died intestate.
His beneficiaries are thus specifically and definitely described
and designated. And his language directing how the division
shall be made is no less clear and specific. They are to take the
estate comprehended by the gift in "equal parts"; they are to
share it *equally*. His manifest intention was to give an equal
share of the residuum of his estate to all those persons whom the
statute law of Virginia made his heirs at law; that is, they should
take the property *per capita*. This is the manifest meaning of
the words used by the testator. It follows, naturally, from
giving effect to his every word, as the rule of interpretation re-
quires.

The reference to the statute of descents and distributions was simply to designate the *persons* who were to take the residuum of the estate. The testator did not thereby intend to prescribe also the manner of the division. He does not say that the persons designated were to take *as if* he had died intestate, which would give some color to the contention that they take in the manner prescribed by the statute, but merely that those persons should take who would be his heirs *in case* he had died intestate. The reference to the statute ascertains *who* shall take, but not *how* they shall take. *How* they are to take is otherwise prescribed; they are to take "in equal parts."

If the testator had meant that both the persons who were to take, and the manner of the division should be in accordance with the statute as if he had died intestate, then this clause in his will was entirely useless, for, in that case, the same persons would take, and in the same manner, as if he had indeed died intesttate. It is to be presumed that he had some object in inserting this clause in his will. That object is, we think, unmistakable. He meant that those persons who would be his heirs at law under the statute in case of intestacy, should have the residuum of his estate, yet he did not intend that they should take it in the manner prescribed by the statute, but *equally.* While the fact, that one of two constructions of a provision in a will of doubtful meaning would only accomplish that which the law would do in the absence of such provision may not be entitled to much consideration in construing the provision, yet it is a circumstance to be weighed against that construction of the provision which would make its insertion in the will a useless act, and in favor of a different disposition of the estate manifested by the words of the provision, but which would not have been accomplished by the operation of the law, if the testamentary disposition had not been made. The argument to be drawn from its uselessness under one construction should strengthen the other interpretation.

In order to hold that the beneficiaries take *per stirpes*, the

mode of division prescribed by the testator would have to be disregarded. In that construction, no effect would be given to the direction that the residuum should be divided "in equal parts" among those to whom it was given. If they were held to take *per stirpes* instead of *per capita*, then they would take in *unequal*, instead of "equal parts." Helen Kemple and Mary E. Webster, sisters of the testator, would each receive, under that construction, one-third of the residuum, while Elenia P. Walker, a daughter of Eliza Brannon, a deceased sister of the testator, would receive one-sixth, and Lena Leadbetter, Mariana Newman, and Bessie Newman, children of Eliza Newman, deceased, another daughter of Eliza Brannon, would divide the remaining one-sixth between them, making the share of each of them one-eighteenth, in direct violation of the principle of equality of division expressly prescribed by the testator in the clause of his will making the gift.

The construction we have placed on the will is not only the plain and natural meaning of the language used by the testator, but is in conformity with the general rule for construing gifts of this character. "Where a bequest is made to several persons," said this court in *Hoxton* v. *Griffith*, 18 Gratt. 577, "in general terms, indicating that they are to take equally as tenants in common, each individual will, of course, take the same share; in other words, the legatees will take *per capita*. The same rule applies where a bequest is to one who is living, and to the children of another who is dead, whatever may be the relations of the parties to each other, or however, the statute of distributions might operate upon those relations in case of intestacy. Thus where property is given 'to my brother A, and to the children of my brother B,' A takes a share only equal to that of each of the children of B. So, where the gift is to A's and B's children, or to the children of A, and the children of B, the children take as individuals, *per capita*. The substance of this rule of construction is, that, in the absence of explanation, the children in such a case are presumed to be referred to as individuals, and not

as a class, and that the relations existing between the parties, and the operation which the statute would have upon those relations in case of intestacy, are not sufficient to control this presumption. The general rule is well established and has been fully recognized by the decisions of this court. *Brewer* v. *Opie*, 1 Call. 212; *Crow* v. *Crow*, 1 Leigh 74; *McMaster* v. *McMaster*, 10 Gratt. 275."

Judge Joynes, in delivering the opinion of the court in that case, stated it is true, that the rule enunciated above was not inflexible, and that where an intention can be gathered from the whole will, that the children of a deceased parent are to take as a class, the general rule must yield to that intention, which is simply saying that the intention of the testator must govern, as the cardinal rule in the construction of wills requires. But here there is not the least indication in the will of a contrary intention. The gift is to the objects of his bounty as individuals and not by classes, and is to be equally divided between them. Therefore, the general rule of construction in a case of this character, and the plain and natural meaning of the words used by the testator in making the gift in controversy, are in exact accord.

If we seek light from the decided cases in interpreting the provision in question authority is abundant to support the construction we have placed upon it.

The bequest construed in *Crow* v. *Crow*, 1 Leigh 74, was as follows: "I devise and direct that the balance of my slaves shall be equally divided between my children, to wit, the heirs of William Crow—namely, William, Robert, Patsey, Nancy, Henry, Ennis and John (heirs of William Crow, deceased), Thomas, Moses, John Crow, and the children of my deceased daughter, Massey Jones, and the children of my deceased daughter, Sarah Crane, to them and their heirs; but the children of my daughter, Massey Jones, are to take only such part as their mother would take if she was still alive; that is to say, a child's part; and in like manner the children of my daughter, Sarah

Crane, are to take only such part as their mother would take if she was still alive, that is to say, a child's part." The question presented for the decision of the court was whether, under the words of the will, the children of William Crow, deceased, took *per capita,* equal shares with Thomas, Moses, and John, the children of the testator, or *per stirpes,* the share of their father, as the children of Mrs. Jones and Mrs. Crane took. It was held that they took *per capita.* "It seems to me," said Judge Carr, who delivered the opinion of the court, "that the plain, natural, meaning of the words, and the rules diawn from the cases, lead us to the same conclusion." And this conclusion, as will be seen from the opinion, was reached independently of the explanatory clause as to how the children of the testator's daughters, Massey Jones and Sarah Crane, should take.

In *McMaster* v. *McMaster,* 10 Gratt. 275, the following was the bequest brought under construction: "I will and bequeath to the children of Arthur McMaster and David McMaster, and to Robert B. McKee McMaster, all the funds remaining after every just claim against my estate has been satisfied, to be equally divided between them." Arthur McMaster had five children, of whom Robert B. McKee McMaster was one. David McMaster also had five children. The court held that the fund should be divided into ten shares, one of which was to be given to each of the children of Arthur McMaster, and to each of the children of David McMaster. The language of Judge Samuels, in delivering the opinion of the court in that case, is strikingly applicable to this. "The amount of the bounty," said he, "is the residuum. The objects of the bounty are the children of Arthur McMaster and those of David McMaster, designated by a general description, and, we may add, by the particular description. It only remains to ascertain their respective interests; and that question is determined by the direction that the bounty is 'to be equally divided between them.' "

In *Freeman* v. *Knight,* 2 Ire. Eq. 72, the following, among other bequests, was the subject of construction: "It is also my

will that Big Sam and Isaac should be sold, and the proceeds equally divided between my legal heirs." The court, in construing this clause, said: "It was there determined" (referring to a former decision of the court), "that when a testator makes an immediate gift of personal property to 'his heirs,' he means a gift to those whom the law has appointed to succeed to the personal estate of dead men, who have made no appointment themselves. If so, it includes the widow, and it includes the children of a deceased child. We consider it as a consequence resulting from the adoption of this rule of construction, that where personal property is given *simpliciter* to 'heirs,' the statute of distributions is to be the guide, not only for ascertaining *who* succeed, and who are the 'heirs,' but *how* they succeed, or in what proportions they respectively take. But as the donees claim not under the statute, but under the will, if the will itself directs the manner and the proportions in which they are to take, the directions of the will must be observed, and the guidance of the statute is to be followed no further than where the will refers to it, that is to say, for the ascertainment of the persons who answer to the description therein given. The testator has here directed the manner of distribution—the proceeds are to be 'equally divided.' The division directed by the will must be obeyed, and the children of the deceased child take equal shares with the widow and surviving children."

In *Tuttle* v. *Pruitt*, 68 N. C. 543, the testator, John Pruitt, devised a certain tract of land, describing it, to his son, Daniel M. Pruitt, and annexed to it this condition: "Now, in case the said D. M. Pruitt and the balance of my heirs cannot agree in the price of the above described and bounded lands, the parties can choose a mutual board of valuation, and if the said D. M. Pruitt is not willing to abide by the valuation thus obtained, then, in that case, I will that the above bounded lands be sold, and the proceeds equally divided among all my heirs, &c." The court held that the division among his heirs must be *per capita*, and added: "It is too firmly settled by authority to admit of a

question, that where a testator directs his property, whether real or personal, to be equally divided among his heirs, the division must be *per capita*, and not *per stirpes*." Many other cases might be cited to the same effect, but it is deemed unnecessary.

We are of opinion that the Chancery Court erred in holding that the residuum of the estate of the testator should be distributed *per stirpes*, and not *per capita*, and for such error its decree must be reversed.

KEITH, P., dissent,

*Reversed.*