## Richmond

Nathaniel Ewing, Et Al. v. Caleb J. Gibson, Executor of the Last Will and Testament of H. C. T. Ewing, Deceased, Et Al.

March 10, 1958.

Record No. 4768.

Present, All the Justices.

The opinion states the case.

*Lucas D. Phillips* (*Stilson H. Hall*, on brief), for the appellants.

*R. Harvey Chappell, Jr.* (*Wilbur C. Hall; J. Edward Thoma; Christian, Barton, Parker & Boyd; Harrison, Benham & Thoma*, on brief), for the appellee.

Eggleston, J., delivered the opinion of the court.

H. C. T. Ewing died testate on October 1, 1954. After pro-

viding for the payment of his debts and funeral expenses and a suitable monument to mark his last resting place and that of his wife, Lucy L. Ewing, who had predeceased him, the will made this disposition of the residuum of his estate:

"All the rest, residue and remainder of my property, real, personal and mixed, wheresoever situated or located, I give, devise and bequeath, in equal shares, to my lawful heirs and the lawful heirs of my beloved wife, Lucy L. Ewing, who departed this life on April 19, 1952, in accordance with the Statutes of the State of Virginia in such case made and provided."

The testator's estate consisted of both real and personal property. He left surviving three nieces and three nephews who, according to the statute of descent (Code, § 64-1), were his heirs at law. At the time of the testator's death his wife's heirs then living were twelve in number. They were two brothers, a sister, seven nieces and two nephews, children of a deceased sister.

James O. Gibson, a brother of Lucy L. Ewing, died on November 26, 1955, leaving a will the provisions of which are not here pertinent. Suffice it to say that his devisees and legatees take such interest in the estate of H. C. T. Ewing as he (Gibson) acquired under the Ewing will.

Caleb J. Gibson, the executor of the Ewing will, filed the present suit against the devisees and legatees, praying for a construction of the will. The sole question involved was whether under a proper interpretation of the will the residuum of the Ewing estate vested in and was distributable *per capita* among the heirs of the testator and the heirs of his wife, Lucy L. Ewing, or whether it vested in and was distributable *per stirpes*, one-half to the six heirs of the testator and one-half to the twelve heirs of his wife. The lower court held and decreed that the estate vested in and was distributable *per capita* among the heirs of H. C. T. Ewing and the heirs of his wife, Lucy L. Ewing; that is, that each of the eighteen heirs took an equal share. From that decree Nathaniel Ewing and the other heirs of H. C. T. Ewing have appealed.

We agree with the lower court's interpretation of the will. It is well settled in this jurisdiction that where there is a devise or bequest to several persons in general terms, indicating that they are to take equally, or in equal shares, they take *per capita*, that is, each individual takes an equal share, regardless of how the statute of descent might operate in case of intestacy. *Crow* v. *Crow*, 1 Leigh (28 Va.) 74, 77;

*Hoxton* v. *Griffith*, 18 Gratt. (59 Va.) 574, 577. Thus, where there is a gift to the children of A and the children of B, the children take as individuals *per capita*. This is under the rule of construction that, in the absence of explanation, such children are presumed to be referred to as individuals and not as a class. *Walker* v. *Webster*, 95 Va. 377, 381, 28 S. E. 570; *Driskill* v. *Carwile*, 145 Va. 116, 123, 124, 133 S. E. 773.

In the present case, since there is no contrary indication in the will, the heirs of the testator's wife became fixed at the time of the death of the testator. *Driskill* v. *Carwile, supra*, 145 Va., at page 121.

█ The appellants concede the correctness of these principles, but say that they do not apply in the present case because the gift is "to my lawful heirs and the lawful heirs of my beloved wife, * * * in accordance with the Statutes of the State of Virginia." Since there is, of course, no statute of descent under which a wife's heirs will inherit from her husband, they say, the reference to the statute shows the intent to create two separate classes, namely, "my lawful heirs" and "the lawful heirs of my beloved wife," each class to take the same share as the other.

A reading of the paragraph as a whole shows that this contention is not sound. The reference to the statute of descent, in case of both the testator's lawful heirs and those of his wife, is merely to identify those *who* take, but not *how* they take. The beneficiaries are identified as the heirs of the testator and heirs of his deceased wife according to the Virginia statute of descent. But the testator does not say that the shares of the beneficiaries are to be fixed according to the statute of descent. He has otherwise provided how they take, "in equal shares," that is, each individual takes the same share regardless of his or her relation to the other beneficiaries.

This interpretation is in accord with the principles laid down in *Walker* v. *Webster, supra*. There the testator directed that the residuum of his estate "be divided in equal parts, among those who would be my heirs at law, under the statute of descents and distributions in Virginia, in case I had died intestate." Had the testator died intestate his heirs at law under the statute of descent would have been two sisters, a niece and three great-nieces. The testator's two surviving sisters contended that under a proper interpretation of the will the parties took *per stirpes*, that is, each surviving sister took one-third and the remaining one-third was to be divided among the heirs of a

deceased sister, who were a daughter and the three children of a deceased daughter.

This court rejected that contention, pointing out that the testator's reference to the statute of descent and distribution "ascertains *who* shall take, but not *how* they shall take. *How* they are to take is otherwise prescribed; they are to take 'in equal parts.' " (95 Va., at page 380.) Moreover, it was pointed out, to hold that the beneficiaries take *per stirpes* would disregard the testator's express direction that they should take "in equal parts." It would result in each surviving sister getting one-third of the estate while the surviving niece would get one-sixth and the three surviving great-nieces one-eighteenth each. 95 Va., at page 381.

The same is true in the present case. To follow the interpretation urged by the appellants would mean that the beneficiaries would not get "equal shares" of the residuum. Under their interpretation one-half of the residuum would be divided among the six nieces and nephews of the testator, while the other half would be divided among the wife's two brothers, a sister, and the nine children of a deceased sister. There would be a further inequality of division between the wife's brothers and sister on the one hand, and the several children of the deceased sister on the other. There is nothing in the language used by the testator to indicate that such was his intent.

The view we have taken of the matter is in accord with the principles stated and authorities cited in *Blackburn* v. *Hedgbeth, et al.*, 199 Va. 767, 102 S. E. 2d 329, this day decided. See also, *Coppedge* v. *Coppedge*, 234 N. C. 173, 66 S. E. 2d 777.

For these reasons the decree appealed from is

*Affirmed.*