## Wytheville.

### NANNIE E. DRISKILL, ET ALS. V. MARY P. CARWILE, ET ALS.

. June 17, 1926.

1. WILLS—*Construction—Former Adjudications Not Very Helpful.*—As two wills rarely use the same language, and every will is generally unlike all other wills in some particular, the adjudicated cases frequently afford little aid. The reasoning applied in construing previous wills is much relied on in construing later and different wills, in the effort to follow beaten paths and thus to establish some general rules. Such laudable efforts frequently fail, because it is from the will then to be construed that the court must ascertain the intent of the particular testator and if his purpose be legal to give it effect.

2. CONVERSION AND RECONVERSION—*Wills—Direction that Land be Sold and Proceeds Divided.*—Where by a will land is directed to be sold and the proceeds divided among those indicated as the objects of the testator's bounty, the doctrine of equitable conversion applies.

3. WILLS—*Construction—Effect Given to Every Word.*—Effect must be given to every word of a will, if any sensible meaning can be assigned to it, not inconsistent with the general intention apparent on the whole will taken together.

4. WILLS—*Construction—Technical Words.*—While the general rule is that technical words are presumed to be used technically and words having a definite legal significance are to be understood as used in their definite legal sense, nevertheless when expressions are used in the instrument in conjunction with such technical words which plainly indicate the intention and also that such intention was not in accordance with the technical signification, the manifest intention will control the legal operation of the words.

5. WILLS—*Construction—Heirs in the Sense of Children—Case at Bar.*—In the instant case testator after creating a life estate directed that at the death of the life tenants the property was to be sold "and equally divided between the living heirs of my brothers and sisters." *Held:* That the word "heirs" was to be construed as meaning children.

6. WILLS—*Gift to a Class—"Living Heirs of my Brothers and Sisters"— Case at Bar.*—In the instant case testator after creating a life estate directed that at the death of the life tenants the property was to

be sold "and equally divided between the living heirs of my brothers and sisters." That this is a gift to a class, the living children of the testator's brothers and sisters, appears manifest, for it meets the accepted definition, namely, that it is a "gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the ultimate number."

7. WILLS—*Gift to a Class—Fixing Time when the Class is to be Ascertained.*—The general rule is, that the time for fixing the membership in a class taking under a will is the death of the testator; but where the distribution is to be made among a class at a time subsequent to the testator's decease, then only those who belong to the class when such time arrives are entitled to share in the distribution.

8. WILLS—*Gift to a Class—Fixing Time When the Class is to be Ascertained—Case at Bar.*—In the instant case testator gave his sister and her husband a life estate in certain real property, "and at their decease, I direct the same to be sold and equally divided between the living heirs of my brothers and sisters."

    *Held:* That the will plainly fixes the death of the survivor of the life tenants as the date for determining the class of beneficiaries under the will.

9. WILLS—*Intention of the Testator.*—The primary maxim is, that effect must be given to the expressed intention of the testator.

10. WILLS—*Per Stirpes or Per Capita.*—If there is nothing in the instrument to be construed which shows an intention to have the property divided *per stirpes*, the general rule is that the beneficiaries take *per capita.*

11. WILLS—*Per Stirpes or Per Capita—Case at Bar.*—In the instant case testator gave his sister and her husband a life estate in certain property, providing that at their decease the property should be sold and the proceeds equally divided between the living heirs of his brothers and sisters.

    *Held:* That heirs was to be construed as children, and that the children living at the decease of the surviving life tenant took *per capita* and not *per stirpes.*

12. WILLS—*Per Stirpes or Per Capita.*—Where a testator directs that property be equally divided among his beneficiaries, this emphasizes his intention that the beneficiaries shall take *per capita* and not *per stirpes.*

Appeal from a decree of the Circuit Court of Charlotte county, construing a will.

                      *Affirmed.*

The opinion states the case.

*A. S. Hester*, for the appellants.

*K. L. Woody*, for the appellees.

PRENTIS, P., delivered the opinion of the court.

This suit was instituted for the purpose of construing the will of P. J. Sterne, and to determine those entitled thereunder to the proceeds of sale of certain real estate thereby directed to be sold.

The testator devised two tracts of land and bequeathed certain personal property thereon to his sister, Nannie P. Moon, for life, and concludes the clause with this language: "the said property I give unto Nannie P. Moon during her life and that of her husband, Nathan S. Moon, and at their decease, I direct the same to be sold and equally divided between the living heirs of my brothers and sisters." This quoted clause is that which is to be construed. Both Nannie P. Moon and her first husband, Nathan S. Moon, are dead.

[1] As two wills rarely use the same language, and every will is generally unlike all other wills in some particular, the adjudicated cases frequently afford little aid. My Lord Coke said, over three hundred years ago, that "wills and the construction of them do more perplex a man than any other learning; and to make a certain construction of them, this *excedit jurisprudentum artem.*" Such questions continue to puzzle the courts. The reasoning applied in construing previous wills is much relied on in construing later and different wills, in the effort to follow beaten paths and thus to establish some general rules. Such laudable

efforts frequently fail, because it is from the will then to be construed that the court must ascertain the intent of the particular testator and if his purpose be legal to give it effect. Such efforts to apply general principles have frequently obscured the truth by over-much speaking, and this favorite pastime often darkens counsel by words without knowledge. In this case, however, we have no such confusion, and can safely follow the precedents.

The real controversy in this case is whether the fund is to be divided into six equal parts and distributed to the descendants of the six brothers and sisters of the testator *per stirpes*, or is to be distributed *per capita* to the children of these brothers and sisters, twenty in number, living at the death of the life tenant. The trial court took the latter view and held that each of these twenty children takes equally. The appellants are here assigning error and alleging that the fund should be distributed *per stirpes*.

[2] The first thought which is suggested is that the doctrine of equitable conversion applies, because the land is directed to be sold and the proceeds divided among those indicated as the objects of the testator's bounty. *Carr* v. *Branch*, 85 Va. 601, 8 S. E. 476; *Moore* v. *Kernachan*, 135 Va. 211, 112 S. E. 632.

We then have to determine what the testator meant when he directed that the fund should go to the "living heirs" of his brothers and sisters.

It appears that the life tenant, his sister, never had any children, but at the time of his death he had six other brothers and sisters who were married and had children.

[3] In *Walker* v. *Webster*, 95 Va. 377, 28 S. E. 570, a will directed the testator's estate to be "divided in equal parts among those who would be my heirs at

law under the statute of descents and distribution in Virginia in case I had died intestate." In holding that the devisees in that case took *per capita* and not *per stirpes*, Riley, J., discusses certain cardinal rules. The controlling words in that devise were held to be the direction that the property should be "divided in equal parts," and in this connection it is said: "And in thus ascertaining the intention, effect must be given to every word of the will, if any sensible meaning can be assigned to it, not inconsistent with the general intention apparent on the whole will taken together. Words are not to be changed or rejected unless they manifestly conflict with the plain intention of the testator, or unless they are absurd and unintelligible or unmeaning for want of any subject to which they may be applied."

[4] In this will, then, we have the words "living heirs" applied to his brothers and sisters who were themselves then living. This use of the word "heirs" applied to persons then living seems to make it manifest that the word was not used in a technical sense. While the general rule is that technical words are presumed to be used technically and words having a definite legal significance are to be understood as used in their definite legal sense, nevertheless when expressions are used in the instrument in conjunction with such technical words which plainly indicate the intention and also that such intention was not in accordance with the technical signification, the manifest intention will control the legal operation of the words.

[5] Applying this rule to a deed conveying land to the "heirs" of a living person, this court, in *Roberson v. Wampler*, 104 Va. 380, 51 S. E. 835, 1 L. R. A. (N. S.) 318, held that the word "heirs," as used in that

deed, meant *children*. That case and the numerous cases cited in the opinion by Buchanan, J., are ample support for the view of the trial court, that in devising the proceeds of this property to the living heirs of his brothers and sisters, the testator intended to give it to their children, and so the word "heirs" in this will is to be construed as meaning children. Other pertinent cases are, *Commonwealth* v. *Wellford*, 114 Va. 376, 76 S. E. 917, 44 L. R. A. (N. S.) 419; *Halsey* v *Fulton*, 119 Va. 574, 89 S. E. 912.

[6] Then we come to another question. That this is a gift to a class, the living children of the testator's brothers and sisters, appears manifest, for it meets the accepted definition, namely, that it is "a gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the ultimate number." 28 R. C. L., sec. 233, p. 260.

[7] Being a gift to a class, it is necessary to determine the time when the membership in that class is to be ascertained. Here, too, we have little difficulty, because of the precedents. The general rule is, that the time for fixing the membership in a class taking under a will is the death of the testator; but where the distribution is to be made among a class at a time subsequent to the testator's decease, then only those who belong to the class when such time arrives are entitled. to share in the distribution. 28 R. C. L. p. 264, sec. 238; *Collin* v. *Collin*, 1 Barb. Chy. (N. Y.) 630, 45 Am. Dec. 420; *Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127, 78 N. E. 697, 116 Am. St. Rep. 536; *Thompson* v. *Garwood*, 3 Whart. (Pa.) 287, 31 Am. Dec. 502; *Coggin's Appeal*, 124 Pa. St. 10, 16 Atl. 579, 10 A. S. R. 565.

In 40 Cyc. 1477, we find this statement of the rule, which is particularly applicable to this will: "Where under the provisions of the will a gift to a class is postponed, either to a particular time or pending the termination of a preceding estate, as a rule those members of the class, and those only, take who are in existence at the arrival of the time of distribution, as at the death of the life tenant, unless the particular language used confines the gift to those in existence at the testator's death, or who are in existence at the date of the will."

2 Jarman on Wills (6th Ed., Bigelow) 675, (1547), supports the same view thus: "In this state of the authorities, one scarcely need hesitate to affirm that the rule which reads a gift to survivors simply as applying to the objects living at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred; and that where such a gift is preceded by a life, or other prior interest, it takes effect in favor of those who survive the period of distribution, and of those only."

[8] As has been shown in this case, this gift to the class is preceded by the joint life estate of Nannie P. Moon and her husband, and the period of distribution is clearly fixed—that is, at the time of the death of the survivor.

In *Coveny* v. *McLaughlin*, 148 Mass. 576, 20 N. E. 165, 2 L. R. A. 448, the language was, " * * but on her decease I give and devise the same to my surviving children, to be divided equally between them," and the court stating the same question which is raised here said: "The question is whether the word 'surviving' relates to the time of the testator's death, or to that of his wife's death. According to the natural use of language, it has reference to the latter event.

It is placed in close connection with her decease. No reference is made to the time of his own death in any part of the will. The word 'surviving' would be. unnecessary and meaningless if he meant to give the remainder of his estate to all of his children.''

It seems unnecessary to say more, for here the meaning of the will is plain and fixes the death of the life tenant as the date for determining the membership of this class of beneficiaries under this will.

The real controversy between these litigants is whether the property should be divided *per capita* or *per stirpes.*

[9, 10] The primary maxim is, that effect must be given to the expressed intention of the testator. If, however, there is nothing in the instrument to be construed which shows an intention to have the property divided *per stirpes*, the general rule is that the beneficiaries take *per capita*, and this is true in this jurisdiction, so well expressed in *Walker* v. *Webster,* 95 Va. at p. 381, where Riely, J., said: " 'Where a bequest is made to several persons,' said this court in *Hexton* v. *Griffith,* 18 Gratt. [59 Va.] 577, 'in general terms, indicating that they are to take equally as tenants in common, each individual will, of course, take the same share; in other words; the legatees will take *per capita.* The same rule applies where a bequest is to one who is living, and to the children of another who is dead, whatever may be the relation of the parties to each other, or, however the statute of distributions might operate upon those relations in case of intestacy. Thus where property is given "to my brother A, and to the children of my brother B,'' A takes a share only equal to that of the children of B. So where the gift is to A's and B's children, or to the children of A and the children of B, the children take as individuals,

*per capita.* The substance of this rule of construction is that, in the absence of explanation, the children in such a case are presumed to be referred to as individuals, and not as a class and that the relations existing between the parties, and the operation which the statute would have upon those relations in case of intestacy, are not sufficient to control this presumption. The general rule is well established and has been fully recognized by the decisions of this court. *Brewer* v. *Opie,* 1 Call. [5 Va.] 212; *Crow* v. *Crow,* 1 Leigh [28 Va.] 74; *McMaster* v. *McMaster,* 10 Gratt. 275'. " *Whittle* v. *Whittle,* 108 Va. 22, 60 S. E. 748; *Perdue* v. *Starkey,* 117 Va. 807, 86 S. E. 158, Ann. Cas. 1916C, 409.

[11, 12] Here this intention is also evidenced and emphasized by the direction that the property is to be equally divided, and in this connection a quotation from *Tuttle* v. *Pruitt,* 68 N. C. 543, may be repeated: "It is too fully settled by authority to admit of question, that where a testator directs his property, whether real or personal, to be equally divided among his heirs, the division must be *per capita* and not *per stirpes.*"

While it is not often that we find two wills in which the language used is precisely the same, we find in *Kalback* v. *Clark,* 133 Iowa 215, 110 N. W. 599, 12 L. R. A. (N. S.) 801, 12 Ann. Cas. 643, a will which is quite similar to that of this testator. The language there was, to "the heirs of my four children, George P., John A. and Edgar B. Clark and Mary C. Wolcott." The court thus expresses itself: "On the one hand it is contended that, as Geo. P. Clark is not dead, and, technically speaking, has no heirs, the provision of the will as to his heirs cannot be carried out and is void, under the old maxim, *Nemo est haeras viventis.* It is

true, of course, that no one can have heirs while living and that it cannot be determined who his heirs may be until his death. But wills are not, as a rule, to have a technical construction, unless it appears that the testator used the words employed by him in a technical sense. In the case before us all of testator's children were living when this will was made, and the bequest was not to them but to their heirs. Testatrix evidently used the words 'the heirs of my four children,' as the equivalent of 'children,' for she directed that distribution be made among them upon the death of the life tenant. The words are not used to denote succession but to describe the legatees who were to take under the will and they should not be given their strict legal meaning, for this was evidently not the testator's intention. * * * So it is apparent that the testatrix did not use the word 'heirs' in its strictly technical sense. We are clearly of the opinion that the trial court was right in holding that the remainder passed to the children of the four children named in the will in being at the termination of the life estate; for it was then that the principal estate was to be divided." In that case the court also held that the children in being at the termination of the life estate took *per capita* and not *per stirpes.*

The decree of the trial court is in accordance with these views and is well supported by reason and precedent.

*Affirmed.*