# Wytheville.

## MURCHISON, ET AL. V. WALLACE, ET ALS.

June 18, 1931.

Present, Prentis, C. J., and Holt, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Henry C. Riely* and *Robert Wright Strange,* for the appellants.

*W. W. Butzner, F. M. Chichester, G. B. Wallace, M. G. Wallace* and *John Howard,* for the appellees.

Holt, J., delivered the opinion of the court.

This cause is an indirect sequent of *Hentz* v. *Wallace's Adm'r*, 153 Va. 437, 150 S. E. 389. There a decree, which sustained the will of Mrs. Victoria B. Stevens Wallace and which admitted it to probate, was approved.

In a codicil of date August 31, 1886, she made these provisions:

"I make this codicil to my will on this thirty-first day of August, 1886, directing; by this paper that should my husband A. Wellington Wallace die before me; the rest and residue of my estate, of which I may die seized, shall be divided into two parts, one part to go to the devisees of my said husband or his heirs at law; and the other half to be divided into two parts; one to go to Mrs. Roberta G. Newbold and her issue; and the other part to go to the devisees or heirs of my said husband; dated York, England.

"Victoria B. S. Wallace.

"I changed the word 'directed' to 'directing' in the fourth line.

"V. B. S. W."

In conformity with the power thus given him, Judge Wallace, by will of date December 28, 1918, in item 8, said:

"In the codicil of the will of my wife dated on the 31st day of August, 1886, and executed by her in York, England, on the date thereof, being drawn and executed wholly in her own handwriting, she provided that in case of my death before hers that three-fourths of her estate should go to the devisees of my said husband or his heirs at law. I hereby designate said devisees to be the children of my deceased brothers, J. Gordon Wallace, Samuel Gordon Wallace, Charles Wallace, Howson H. Wallace, and my sister, Lucilla Carmichael, and if she should die before me her interest is to be divided between her son, J. Wallace Carmichael, and his two children, May Car-

michael and George Carmichael. The division under this item 8th to be in accordance with the statute of descent and distribution of Virginia. This is not nor to be included or referred to in any of my trust deeds, present or future, unless expressly so stated, but is to be an express devise to my heirs at law all of which I intend by this provision to include."

Judge Wallace died on October 23, 1927, and thereafter, on December 14, 1927, Mrs. Wallace died. Neither of them had children.

The four brothers mentioned by Judge Wallace in item 8 of his will were all of his brothers who died leaving descendants. As indicated, these four brothers were all dead when the will was made. Among them they left thirteen children, either living when Judge Wallace died or having previously died, leaving descendants, as presently shown. His sister, Lucilla Carmichael, was living when he executed the will, but she predeceased him, and her son, an only child, J. Wallace Carmichael, predeceased her, leaving the petitioners surviving as his only children. Six of Judge Wallace's nieces and nephews predeceased him, namely, Lucilla W. Yerby, who left two children; Kate Wallace Poindexter, who left two children; Michael Wallace, who left five children; J. Stansbury Wallace, who left two children; Mary Gordon Wallace, who left one child; and, as already stated, J. Wallace Carmichael, who left two children. Also one of his great-nieces predeceased him, namely, Bessie Poindexter, daughter of Kate Wallace Poindexter, above mentioned, who left four children. Judge Wallace thus left surviving him, as the persons entitled to share in the property disposed of under item 8 of his will, either by direct designation therein or as claimants under persons so designated, but dead when the will took effect, eight nephews and nieces, thirteen great-nephews and nieces and four great-great-nephews and nieces, or twenty-five persons in all.

The following table shows just who these heirs and distributees are, and their degree of kinship to Judge Wallace:

I. J. Gordon Wallace, a deceased brother, who left—
   (a) Samuel G. Wallace (living), of Richmond, Va.
   (b) Gordon Wallace (living), of Richmond, Va.
   (c) Lucilla W. Yerby (deceased), who left two children:
      (1) Mrs. Victor Pierson (living), Spotsylvania county.
      (2) Wallace Yerby (living), North Carolina.
   (d) Kate Wallace Poindexter (deceased), leaving two children—
      (1) Bessie Poindexter Taylor (deceased), leaving the following children:
         a. Catherine Woodruff Taylor;
         b. Leonora Taylor, infant twenty years of age;
         c. William Woodruff Taylor, infant fifteen years of age;
         d. Elizabeth Gordon Taylor, infant eleven years of age; all of whom live in Warrenton, N. C.
      (2) Gordon Poindexter (living), North Carolina.
II. Samuel Gordon Wallace, a deceased brother, who left:
   (a) John H. Wallace (living), Stafford county.
   (b) A. Hansford Wallace (living), Fredericksburg, Va.
   (c) Samuel G. Wallace (living), Fredericksburg, Va.
   (d) Bell Wallace Chichester (living), Stafford county.
   (e) Michael Wallace (deceased), leaving the following children:
      (1) Agnes Wallace, infant seventeen years of age;
      (2) Mary Hansford Wallace, infant fifteen years of age;
      (3) Katherine Wallace, infant thirteen years of age;
      (4) Helene Wallace, infant ten years of age;
      (5) Margaret Wallace, infant eight years of age, all of Stafford county, Va.

III. Charles Wallace, a deceased brother, who left only one child:
    (a) Stansbury Wallace (deceased), leaving two children:
        (1) Charles Wallace (living), Baltimore, Md.;
        (2) Lillie Braxton Wallace (living), Fredericksburg, Va.
IV. Howson H. Wallace, a deceased brother, who left three children:
    (a) H. Lewis Wallace. (living), Fredericksburg, Va.;
    (b) Ellen Wallace Smith (living), Washington, D. C.;
    (c) Mary Gordon Wallace Knox (deceased), leaving one child:
        (1) Ellen Howson Knox (living), Baltimore, Md.
V. Lucilla Carmichael, a deceased sister, who had one child.
    (a) Wallace Carmichael, who predeceased her, leaving two children:
        (1) George Carmichael (living), New York city;
        (2) May Carmichael Murchison (living), Wilmington, N. C.

In due course this cause came on to be heard on the report of Special Master Commissioner B. P. Willis. That report was approved by Judge Coleman in a written opinion, now a part of this record, and in accordance therewith he directed that this estate be distributed as follows:

(I) One-fourth to Roberta G. Newbold.
(II) Three-fourths divided into fourteen equal parts as follows:
    (A) Samuel G. Wallace (of Richmond), 1/14;
    (B) Gordon Wallace, 1/14;
    (C) Lucilla W. Yerby's children, 1/14;
        (1) Mrs. Victor Pierson, 1/2 of 1/14;
        (2) Wallace Yerby, 1/2 of 1/14;
    (D) Kate Wallace Poindexter's children:
        (1) Gordon Poindexter, 1/2 of 1/14;

    (2) Bessie Poindexter's children, 1/2 of 1/14;

        (a) Catherine Woodruff Taylor, 1/4 of 1/2 of 1/14;

        (b) Leonora Taylor, 1/4 of 1/2 of 1/14;

        (c) William Woodruff Taylor, 1/4 of 1/2 of 1/14;

        (d) Elizabeth Gordon Taylor, 1/4 of 1/2 of 1/14.

(E) John H. Wallace, 1/14.

(F) A. Hansford Wallace, 1/14.

(G) Samuel G. Wallace (of Fredericksburg), 1/14.

(H) Bell Wallace Chichester, 1/14.

(I) Michael Wallace's children, 1/14;

    (1) Agnes Wallace, 1/5 of 1/14;

    (2) Mary Hansford Wallace, 1/5 of 1/14;

    (3) Katherine Wallace, 1/5 of 1/14;

    (4) Helene Wallace, 1/5 of 1/14;

    (5) Margaret Wallace, 1/5 of 1/14.

(J) J. Stansbury Wallace's children, 1/14;

    (1) Charles Wallace, 1/2 of 1/14;

    (2) Lilly Braxton Wallace, 1/2 of 1/14.

(K) H. Lewis Wallace, 1/14;

(L) Ellen Wallace Smith, 1/14.

(M) Ellen Howson Knox (only child of deceased mother, Mary Gordon Knox), 1/14.

(N) Lucilla Carmichael's descendants, 1/14;

    (1) Only child being dead, leaving two children:

        (a) George Carmichael, 1/2 of 1/14;

        (b) May Carmichael Murchison, 1/2 of 1/14.

■ The estate here passing is personal and not real. Ordinarily, heirs and devisees take real property, while those who take personalty are commonly denominated legatees or distributees, but this distinction is not of primary importance. *Neb-*

*lett* v. *Smith,* 142 Va. 840, 128 S. E. 247; *Driskill* v. *Carwile,* 145 Va. 116, 133 S. E. 773, 775.

Webster's unabridged dictionary defines a devise as: "Act of giving or disposing of property by will; now technically used only of real property, but formerly used as well (and originally only) of the bequest of personal estate."

These technical definitions, never very compelling, are easily overborne by the manifest purpose of the testatrix. Mrs. Wallace, in the codicil noted, was dealing only with personal property, and it is, we think, plain that she had in mind no special purpose to limit its distribution to her husband's devisees when she so described those whom she wished to take. Her will itself makes manifest the fact that she remembered no such distinction. In item 5 she said: "I devise and bequeath the following legacies," etc., and in item 6, which deals with personalty, she said: "The rest and residue of my estate I give and devise to my husband, A. Wellington Wallace."

Item 8 in Judge Wallace's will is but a restatement of the language used by his wife. He was given power to devise it (that is to say, to give it to whomsoever he pleased). In the event that power thus conferred was not exercised, this property was to pass to his heirs at law or to distributees under the statute (Code, sections 5264 and 5273).

The trial court was of opinion that Mrs. Wallace gave to her husband, Judge Wallace, a power of appointment, and that this power was exercised in item 8 of his will, and bases its judgment upon its construction of the provisions there written. This was the position taken, as we understand it, by the plaintiffs in the court below, and it is the position taken by the appellants here, who in their petitions say: "That a general power of appointment was created in Judge Wallace by Mrs. Wallace cannot be reasonably questioned."

The same judgment would have been reached had the trial court been of opinion that this power of appointment was never legally exercised by Judge Wallace. In such circum-

stances, this estate would have passed directly under the will of Mrs. Wallace to the "heirs at law" of Judge Wallace. In either event, the same people would take and in the same proportion.

Judge Coleman was of opinion that a donor can by will grant to another the power to dispose of the donor's estate in the donor's lifetime; such an estate, in the event that the donee predeceases the donor, to pass directly at the donor's death to the donee's appointee. That is to say, it was of opinion that Mrs. Wallace could vest in her husband a power of appointment under which her estate might pass to his appointees in the event that he predeceased her, or to his heirs or distributees in the event that no such designation was made by him.

This conclusion, we think, is sustained by the authorities. Sugden on Powers, 332; *Thorndike* v. *Reynolds,* 22 Gratt. (63 Va.) 21; *Machir* v. *Funk,* 90 Va. 284, 18 S. E. 197.

In the *Thorndike Case,* the power took effect from the date of its execution, but the court there said: "It plainly appears, we think, from the will of Mr. Hubbard, that he intended the clause of his will by which he grants to his wife the power to make a will in his lifetime, should speak and take effect immediately and not be postponed until his death. It is equally clear that Mrs. Hubbard intended that her will should speak and take effect, as an execution of the power, from its date, though not to divest and pass the title in the lifetime of her husband and herself," which is but a restatement of the general rule that intentions must be followed when possible.

The appointment could be by will only, and in its testamentary form must be construed as are other provisions written into wills. 1 Sugden on Powers, 533. Moreover "devisees," as used in these wills, has no technical significance, and is but the synonym of legatees, distributees, or heirs at law.

Appellants, in their assignment of error, "contend that, under the execution of the power of appointment given to Judge Wallace by Mrs. Wallace, the trial court should have

decreed that the interest of Lucilla Carmichael thereunder was equal to a one-fifth share of three-fourths of Mrs. Wallace's residuary estate, and that this interest should be distributed equally between the petitioners. For the failure to so decree, the petitioners now formally assign error.

"This assignment of error is predicated upon the following more particular contentions:

"1. That the donee's will provides for a division, *per stirpes*, of that part of the donor's estate that is subject to the power, through the stocks made by the donee's four deceased brothers and sister, Mrs. Carmichael, the latter one-fifth interest to go to the petitioners.

"2. That, even if the general scheme of distribution of this estate should be construed to be on *per stirpes* basis through stocks other than those just stated, nevertheless, the petitioners should be given a one-fifth interest in the estate under the specific terms of the donee's bequest as to this interest, since such specific terms should be construed, in the event supposed, to be a modification, as to such interest, of the general scheme or plan of distribution."

This will speaks as of the date of the death of the testator or as of the date of its execution. If we adopt the first suggestion, his positive statement made in this item 8, namely: "The division under this item 8th to be in accordance with the statute of descent and distribution of Virginia," then the conclusions of the trial court are plainly correct, for Mrs. Carmichael predeceased her brother, and her grandchildren would take the share of her child, J. Wallace Carmichael, who stood upon the same footing as did other nephews and nieces. If it speaks as of the date of its execution, then it would not be possible to give to her a one-fifth and to divide the residue equally between other nieces and nephews. Code, section 5266; *Ball* v. *Ball*, 27 Gratt. (68 Va.) 325. That is to say, these beneficiaries must be divided into five stocks, or they must take in accord-

ance with the provisions of the will as statutory distributees, taking as of the death of Judge Wallace.

We likewise think it plain that these beneficiaries would take per capita under this provision: "I hereby designate said devisees to be the children of my deceased brothers, J. Gordon Wallace, Samuel Gordon Wallace, Charles Wallace, Howson H. Wallace, and my sister, Lucilla Carmichael," if nothing more had been said.

"The cases all lay it down that where a legacy is to several, whatever may be their relations to each other, or however the statute of distributions might operate upon such relations, equality shall be the rule, unless the testator has established a different one. Thus, to A and B and the children of C all take *per capita;* to A B and C and their children, all living at the testator's death, take equally. So, to the descendants of A and B all their descendants, children, grandchildren, etc., take *per capita.*" *Crow* v. *Crow,* 1 Leigh (28 Va.) 74.

In the late case of *Driskill* v. *Carwile, supra,* Prentis, P., said: "The primary maxim is that effect must be given to the expressed intention of the testator. If, however, there is nothing in the instrument to be construed which shows an intention to have the property divided *per stirpes,* the general rule is that the beneficiaries take *per capita,* and this is true in this jurisdiction, so well expressed in *Walker* v. *Webster,* 95 Va. at p. 381, 28 S. E. 571, where Riely, J., said: ' "Where a bequest is made to several persons," said this court in *Hoxton* v. *Griffith,* 18 Gratt. (59 Va.) 577, "in general terms, indicating that they are to take equally as tenants in common, each individual will, of course, take the same share; in other words, the legatees will take *per capita.* The same rule applies where a bequest is to one who is living, and to the children of another who is dead, whatever may be the relation of the parties to each other, or however the statute of distributions might operate upon those relations in case of intestacy. Thus where property is given 'to my brother A, and to the children of my

brother B,' A takes a share only equal to that of the children of B. So where the gift is to A's and B's children, or to the children of A and the children of B, the children take as individuals *per capita*. The substance of this rule of construction is that, in the absence of explanation, the children in such a case are presumed to be referred to as individuals, and not as a class, and that the relations existing between the parties and the operation which the statute would have upon those relations in case of intestacy, are not sufficient to control this presumption. The general rule is well established and has been fully recognized by the decisions of this court. *Brewer* v. *Opie*, 1 Call (5 Va.) 212; *Crow* v. *Crow*, 1 Leigh (28 Va.) 74; *McMaster* v. *McMaster*, 10 Gratt. (51 Va.) 275."' *Whittle* v. *Whittle*, 108 Va. 22, 60 S. E. 748; *Perdue* v. *Starkey*, 117 Va. 807, 86 S. E. 158, Ann. Cas. 1916C, 409."

The presumption of a *per capita* distribution in such cases is well established in this State, but it is not a strong presumption and is easily overborne. 2 Jarman on Wills, p. 206.

It is true that after provision was made for the children of Gordon Wallace, Samuel Wallace, Charles Wallace and Howson Wallace, and for the living sister, Lucilla Carmichael, this will in the same sentence goes on to say: "And if she should die before me her interest is to be divided between her son, J. Wallace Carmichael, and his two children, May Carmichael and George Carmichael."

It is also true that in the ordinary course of descent a living sister is preferred to the sons and daughters of dead brothers, and to give effect to this the division in a proper case is *per stirpes* and not *per capita*. Code, section 5266. The inference that Judge Wallace had this in mind is entitled to weight and must be given effect unless his will, as written, leads us to a different conclusion. What is there here to indicate such a purpose? Judge Wallace knew that his nephew, J. Wallace Carmichael, would, under the statute, take his

mother's share should she predecease him. For reasons satisfactory to himself he did not wish this to follow, and so provided that this sister's share should be divided between her son and his two children, May and George. Nothing was said about the amount of the interest here dealt with. A definite sum had theretofore been given to the sister. In the contingency noted he merely declared that this sum so given should not pass *in toto* to J: Wallace Carmichael, but should be divided equally between him and his two children. This limitation is effective, independent of the date from which the will operates.

In either event, the course of ultimate distribution would have been changed, and so we see nothing here to indicate how the testator intended that these primary legatees should take. If this were all of item 8, the provision made for the grandchildren of Lucilla would have no probative value. If the sister took a fifth as the representative of a stock, she would take, subject to it, just as she would have done had she taken a fourteenth as an individual. As a matter of fact, she took nothing, for she predeceased her brother.

The testator then said: "The division under this item 8 to be in accordance with the statute of descent and distribution of Virginia." Had the sister survived, she would, under that statute, have succeeded to a one-fifth interest. If effect is to be given to this provision, then the rule which calls for a *per capita* distribution under *Driskill* v. *Carwile, supra,* cannot apply. Those who are to take are named, but the manner in which they are to take he then proceeds to state and restate; they are "by express devise to be my heirs at law," "in accordance with the statute of descent and distribution of Virginia."

With a force which we would not undertake to minimize, it is said that the sister's "interest" is to be divided in certain contingencies between her son and his children; that her interest, had she lived, would have been a fifth, and was not diminished by the fact that she died before the testator,

from which it is argued that this interest is fixed as of the date of the will. But Judge Wallace was an accomplished lawyer, and he knew the primary construction which would attach to the unqualified statement that his distributees were to take under the "statute of descent and distribution of Virginia." Ordinarily, wills speak as of the date of the death of the testator (Code, section 5236) and are to be examined from every angle. We think the intention to follow this ordinary rule finds support in succeeding sections.

Judge Wallace, doubtless, entertained for his sister that affection which might have been expected. If this will takes effect as of its date, she would have been entitled to a one-fifth interest under the statute (Code, section 5266) and she would have taken exactly the same interest had she survived her brother and had it taken effect as of his death. Her interest as a distributee would have been the same in each instance, but Judge Wallace knew that he might outlive her. In that event, no special reason whatever is suggested by the record for the extension of this special consideration for her child. Judge Wallace, no doubt, wished to provide for him just as he wished to provide for his cousins who stood in the same degree of kinship. That nephew had the same claim upon his bounty as did all other nephews and might reasonably be expected to participate in his estate to the same extent that they did. All of this Judge Wallace, doubtless, foresaw and intended to provide against. His sister, had she lived, would have taken a sister's share. In the event of her death, her child was to share with his cousins, from which it appears that Judge Wallace was not unmindful of the date upon which wills usually take effect, but had special reason to desire that the rule usually followed be observed in this case. The court below has divided this estate in exact "accordance with the statute of descent and distribution of Virginia."

Item 8 concludes: "This is * * * to be an express devise to my heirs at law, all of which I intend by this provi-

sion to include:" Here again is expressed the same idea. Judge Wallace was a lawyer of wide experience. When he spoke of his heirs at law he knew as well as anyone that living men had no heirs, but that heirs are those upon whom the law casts the estate of him who dies intestate. An unlettered man might not have had this distinction in mind, but it is not easy to believe that an experienced lawyer overlooked it in a will disposing of an estate which for Virginia is of unusual value. The decree of the trial court, as we have seen, has distributed this estate to these heirs at law in the proportions which they would have taken it had the property in controversy been Judge Wallace's unqualified personal estate and had he died intestate.

We think that the conclusions reached find support in item 9 of Judge Wallace's will. He there undertook to dispose of his own property, as distinguished from that which came to him under the York codicil of his wife's will. In the same general terms, he mentions the nieces and nephews of his dead brothers, and he mentions his sister, Lucilla, by name, and there in terms declares that they shall take *per stirpes,* thus making it plain, if evidence were necessary to make plain this elementary distinction which Judge Wallace knew and remembered between such a distribution and one made *per capita.* He dealt with his own property in a way which he probably felt not free to do when he came to dispose of that which held measurably in trust. He gave this to his heirs in manifest conformity to her wishes. They take as they would have taken under the York codicil had the power of appointment not been exercised.

The representatives of nieces and nephews dead when the testator died take under the statute their ancestors' portions, and so in a limited way the *per stirpes* rule applies in any case, but such application is but an incident of the statute and does not follow from any purpose of the testator to apply it *ab initio.*

We do not mean to say that all of this is perfectly clear. If it were, this case, in all probability, would not be in this court, but it is in effect the conclusion which the trial court

has reached. That conclusion is presumed to be right, and we do not think that error has been made to appear, although we do not mean to hang this case upon so slender a thread. We think it is right.

Mr. H. Lewis Wallace, in his petition in the nature of a separate appeal, claims that he is the residuary legatee and devisee and the only devisee mentioned in Judge Wallace's will, and is, therefore, entitled to take three-fourths of the residuum of Mrs. Wallace's estate. We understand that this is not insisted upon in the event that the judgment of the court below is sustained.

We think his position is untenable for two reasons. The word "devisee" is not entitled to the technical construction insisted upon by this claimant. Moreover, in the bill filed in behalf of himself and others it is said that "the devisees so named in the will of the late A. W. Wallace are the same persons as his heirs at law."

Upon the whole, we are of opinion that there is no reversible error in the decree appealed from and it is affirmed.

*Affirmed.*