# Staunton

ELIZABETH JOHNSON, ET ALS. V. EDGAR KELLY, ET ALS.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*L. P. Summers,* for the appellants.

No appearance for the appellees.

EGGLESTON, J., delivered the opinion of the court.

This appeal involves the construction of the italicized portion of the following clause of the will of James Kelly, deceased:

"3rd: I devise all of my real estate wheresoever situate to my five sons in the following manner, to-wit: To Thomas C. Kelly one-fifth part thereof and to James N. Kelly one-fifth part thereof in fee simple; to Jefferson D. Kelly one-fifth part thereof; to William H. Kelly one-fifth part thereof to be theirs during their natural lives, and at the death of my said sons Jefferson D. Kelly and William H. Kelly their shares to pass to their children, or their descendants; *to my son Jonas S. Kelly, I devise one-fifth interest in my real estate to be his during his natural life, at his decease said*

*interest in said real estate to go to his brothers surviving him or to the children of any of said brothers who may be dead at the decease of my said son Jonas S. Kelly,* unless said Jonas S. Kelly should leave issue then it shall pass to said issue if any."

Jonas S. Kelly died intestate and without issue in 1937. Prior to his death each of his four brothers mentioned in the above clause of the will had died leaving descendants as follows:  James N. Kelly left three children; Thomas C. Kelly had two sons, each of whom died before Jonas S. Kelly, and each leaving a son; Jefferson D. Kelly left surviving him ten children and two grandchildren, the latter being the children of a deceased son; William H. Kelly left surviving him eleven children.

The trial court held that the land which had been devised to Jonas S. Kelly for life should be. divided *per stirpes,* that is, that the children of James N. Kelly should receive one-fourth; the grandchildren of Thomas C. Kelly one-fourth; the children and grandchildren of Jefferson D. Kelly one-fourth; and the children of William H. Kelly one-fourth.

The children of William H. Kelly have appealed, claiming that under a proper interpretation of the above language of the will the property should be divided *per capita* between the children of the deceased brothers of Jonas S. Kelly.

The appellants argue that "The cases all lay it down that where a legacy is to several, whatever may be their relations to each other, or however the statute of distributions might operate upon such relations, equality shall be the rule, unless the testator has established a different one. Thus, to A and B and the children of C all take *per capita;* to A, B and C and their children, all living at the testator's death, take equally.  So, to the descendants of A and B, all their descendants, children, grandchildren, etc., take *per capita.*" *Crow* v. *Crow,* 1 Leigh (28 Va.) 74, 77.

This rule of construction has been recognized and applied many times by this court.  See *Hoxton* v. *Griffith,* 18 Gratt. (59 Va.) 574, 577; *Walker* v. *Webster,* 95 Va. 377, 381, 28 S. E. 570; *Whittle* v. *Whittle's Ex'rs,* 108 Va. 22, 25, 60

S. E. 748; *Driskill* v. *Carwile*, 145 Va. 116, 123, 133 S. E. 773; *Murchison* v. *Wallace*, 156 Va. 728, 739, 159 S. E. 106; *Ward* v. *Ottley*, 166 Va. 639, 641, 186 S. E. 25.

But it is equally well settled that the presumption of a *per capita* distribution is not a strong one and is easily overborne. It "will yield to a very faint glimpse of a contrary intention in the context" (*Hoxton* v. *Griffith, supra*), or a contrary intention deduced from a study of the will as a whole (*Murchison* v. *Wallace, supra; Ward* v. *Ottley, supra*).

In *Hoxton* v. *Griffith, supra*, the presumption of a *per capita* distribution was overcome by the fact that in another portion of the will the testator dealt with the designated children as a class. See also, *Ward* v. *Ottley, supra*.

In the instant case the will provides that if none of the brothers survived Jonas, his share should go "to the children of any of said brothers who may be dead at the decease of my said son" (Jonas). From the quoted words, standing alone, it might well be said that there would be a presumption of *per capita* distribution among the children of the deceased brothers.

But when these words are read with the context, we think the testator intended that the children of each deceased brother should take their father's share, and not that all of the children should take equally, or *per capita*.

In the first place, the testator says that upon the death of Jonas (without issue) his share shall "go to his brothers surviving him *or* to the children of any of said brothers who may be dead." The use of the disjunctive *"or"* instead of the conjunctive *"and"* is significant. It indicates, we think, that the testator intended that Jonas's share should go to such of Jonas's brothers as survived him, with the substitution of the children of any deceased brother to take their parent's share.

In 2 Jarman on Wills (5th Am. Ed.), p. 757, the author says: "Children will also generally take *per stirpes* where the gift to them is substitutional, as in the case of a bequest to several of their children."

■ See also, 69 Corpus Juris, sec. 1318, p. 294, where it is said: "A gift to a class of persons or on their death to their heirs or children will be distributed among such heirs or children *per stirpes;* unless the will discloses a contrary intention; * * * ."

This principle of construction was followed in *Taylor* v. *Fauver,* 2 Va. Dec. 555, 28 S. E. 317. There the testator said: "The balance I will and bequeath to my sisters or their heirs equal to all." One sister died before the testator and left heirs. This court held that the division should be *per stirpes,* and that the heirs of the deceased sister were entitled to the share which their mother would have taken had she been alive.

■ Moreover, in another portion of the paragraph under review, the testator has dealt with the children of Jefferson D. Kelly and the children of William H. Kelly as separate classes. He provides that upon the death of his sons, Jefferson and William, their shares of the property which he had devised to them for their respective lives should "pass to their children or their descendants," which, of course, means that Jefferson's share should pass to his children, and that William's share should pass to the latter's children. It seems to us extremely unlikely that the testator intended to deal with his grandchildren as separate classes in the one instance and not in the other. It is much more likely that he intended to deal with them alike in each instance, that is, to separate his grandchildren into four classes and to leave to each class the share which their respective fathers would have received. See *Hoxton* v. *Griffith, supra.*

We think the interpretation placed by the trial court on the will is correct, and accordingly the decree appealed from is

*Affirmed.*