# Wytheville

ROBERT R. HORNE, ET AL. v. GEORGE R. HORNE, ET AL.

June 14, 1943.

Record No. 2671.

Present, All the Justices.

The opinion states the case.

*Wellford & Taylor*, for the appellants.

*H. M. Ratcliffe*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

The trial judge, Honorable Leon M. Bazile, stated the question presented in this appeal and his reasons for his decision so clearly and so convincingly that the court adopts his opinion as its own.

"This suit started as a suit for the partition of a valuable farm in Henry District, Hanover County, known as 'The Grove.' By deed of May 2, 1903, R. R. Horne and wife, reserving a life estate therein for themselves, gave remainders therein for life to their sons George R. Horne and C. R. Horne with remainders after their deaths 'to their lawful children.' The deed also provided 'I wish my son George R. Horne to be given my dwelling house and seventy-five acres of land and no more, running from the main road towards Chickahominy Swamp.'

"This deed, although witnessed by two witnesses and duly acknowledged before W. C. Newman, a Justice of the Peace for Hanover County, was not admitted to record until September 15, 1909, after the death of the grantor. Who had possession of the deed in the meantime is unknown. However, the testator in his will, probated in the Clerk's Office of Henrico County on June 9, 1909, and dated July 30, 1908, speaks of this deed in such a manner as to indicate that it had been delivered prior to the making of the will, and it is the opinion of the court that it conclusively appears from the will that the deed in question was delivered prior to July 30, 1908, the day on which the will was executed.

"It may also be noted that the grantor R. R. Horne, who had been the Treasurer of Hanover County for a number of years, was the owner of a large number of valuable tracts of land in Henry District, Hanover County, and

that, by the deed of May 2, 1903, he divided his various farms among his several children. The most valuable of these tracts was 'The Grove,' and it is the clause of that deed which disposed of 'The Grove' which is the subject of this suit. This clause of the deed will be quoted later in this opinion.

"C. R. Horne died July 15, 1930, leaving four children, the plaintiffs in this suit. It appears that they had contracted to sell that part of 'The Grove' in which their father had been given a life estate, and the title examiner had raised some question as to whether the property had been properly partitioned between C. R. Horne in his lifetime and George R. Horne, who was then alive. This suit was accordingly instituted, in which the plaintiffs prayed for a partition of that part of 'The Grove' taken by them under the aforesaid deed on the death of their father from that part in which George R. Horne had a life estate.

"George R. Horne and all of the heirs of R. R. Horne, the grantor in aforesaid deed, other than the plaintiff were made parties defendant. George R. Horne, who was living at the time the suit was instituted, died, without issue, on August 19, 1941.

"Thereafter on September 29, 1941, and on October 29, 1941, certain of the heirs of R. R. Horne filed answers, by leave of court, in which they asserted that on the death of George R. Horne, without issue, that part of 'The Grove' which he had received under the aforesaid deed reverted back to the estate of R. R. Horne and" passed to his devisees under the residuary clause of his will.

"By decree of December 4, 1941, this cause was referred to a Commissioner to ascertain who were the heirs of R. R. Horne, who were the necessary parties to this suit, and what were the boundaries fixed by the life tenants as between themselves in 'The Grove.'

"On December 24, 1941, the Commissioner filed his report in which he set forth the names of all of the heirs of R. R. Horne, deceased (the same parties to whom the property would pass under the residuary clause in the will of R. R.

Horne), and reported that they were all properly before the court. He also reported that George R. Horne and C. R. Horne had in their lifetime established a line of partition between the house tract given George R. Horne for his life and the balance of said farm given by said deed to C. R. Horne for his life, and returned a survey showing said line of partition thus established.

"By a decree of December 26, 1941, the two tracts as thus divided by the life tenants were approved and partitioned.

"This left for determination the issue raised by the answers of the defendants, which contention is denied by the plaintiffs.

"The controversy before the court involves the construction of the following provision in the aforesaid deed of May 2, 1903, from R. R. Horne and wife to Annie C. Starke *et al.*: 'To George R. Horne and C. R. Horne, the remainder, after the life estate of the said parties of the first part (which life estate is hereby expressly reserved) of the farm which the said parties of the first part now reside, called "The Grove," containing two hundred and sixty acres, more or less, adjoining the lands of C. R. Horne and the Mechanicsville farm, bounded partly by the county road which leads from Mechanicsville to Ellerson, and partly by the Chickahominy Swamp, for their lives then to their lawful children. I wish my son Geo. R. Horne to be given my dwelling house and seventy-five acres of land and no more, running from the main road towards Chickahominy Swamp.'

"It appears from the evidence that shortly after the taking effect of the life estates given to George R. Horne and C. R. Horne, they adopted a hedge row and fence as the partition line between their respective estates, which line was thereafter accepted as the line between the places given them for life by the aforesaid deed. By this line of division George R. Horne received 76.25 acres and C. R. Horne 194.6 acres. This line of partition was later adopted and approved as the line of partition between the respective parts of 'The Grove,' divided in accordance with the directions contained

in said deed, by decree entered in this cause December 26, 1941.

"On behalf of the children of C. R. Horne, it is contended that the proper construction of the language of the deed creating the remainders in fee in 'The Grove' is that the remainders were given to a class composed of the children of both, if both have children, or if only one has children of the children of such one; and George R. Horne having died without issue the whole estate has passed to the children of his brother C. R. Horne, also deceased.

"On the other hand, the heirs of R. R. Horne, the grantor in the deed, excepting the children of C. R. Horne, contend that the deed created life estates in separate and distinct parts of 'The Grove,' or, at the least, life interests in common, and that the remainders after their deaths must be construed to be distributive so as to give the share of each to his children if he has any; and, George R. Horne having died without issue, that part of the estate given him for his life reverted to the estate of the original grantor.

"It is apparent that the remainders were given to a class. But the question to be decided is were they given to one class or to two classes. If they were given to one class, then the children of C. R. Horne would be entitled not only to the remainder in that part of 'The Grove' given their Father, but to the remainder in the estate given George R. Horne. If, on the other hand, two classes in remainder were intended by the words used in the deed, the children of C. R. Horne cannot take as purchasers the remainder in the estate given by the deed to George R. Horne.

"The law is settled that where a gift is to a class and it fails as to one of the class because of death, revocation, or any other cause, the survivors of the class will take. *Saunders* v. *Saunders*, 109 Va. 191, 195 (1909), and authorities there cited.

"It is equally as well settled that where a legacy, devise or grant is to several, whatever may be their relations to each other, or however the statute of distributions or of descents might operate upon such relations, equality is

the rule, unless the testator or grantor has established a different one. *Crow* v. *Crow*, 1 Leigh 74, 77 (18).

"As was said in the recent case of *Johnson* v. *Kelly*, 171 Va. 153, 155-6 (1938): 'This rule of construction has been recognized and applied many times by this court. See *Hoxton* v. *Griffith*, 18 Gratt. 574, 577; *Walker* v. *Webster*, 95 Va. 377, 381, 28 S. E. 570; *Whittle* v. *Whittle's Ex'ors*, 108 Va. 22, 25, 60 S. E. 748; *Driskill* v. *Carwile*, 145 Va. 116, 123, 133 S. E. 773; *Murchison* v. *Wallace*, 156 Va. 728, 739, 159 S. E. 106; *Ward* v. *Ottley*, 166 Va. 639, 641, 186 S. E. 25.

" 'But it is equally well settled that the presumption of a *per capita* distribution is not a strong one and is easily overborne. It will yield to a very faint glimpse of a contrary intention in the context (*Hoxton* v. *Griffith*, *supra*), or a contrary intention deduced from a study of the will as a whole (*Murchison* v. *Wallace*, *supra; Ward* v. *Ottley*, *supra*).'

"The same rules applicable to the construction of wills are equally applicable to the construction of deeds. *Lindsey* v. *Eckles*, 99 Va. 668, 671, 40 S. E. 23 (1901). As was there said: 'Whether construing a deed or a will, the object is to discover *the intention*, which is to be gathered in every case from the general purpose and scope of the instrument, in the light of the surrounding circumstances. *Stace* v. *Bumgardner*, 89 Va. 418; Pom. Eq. Jur. (2nd ed.) sec. 1012.'

" 'Technical rules of construction are not to be invoked to defeat the intention of the maker of the instrument, when his or her intention clearly appears by giving to the words used their natural and ordinary import.'

"The inquiry is, therefore, what did the grantor intend by the language he employed in the creation of the remainders in 'The Grove,' after the expiration of the life estate reserved and created by the clause which disposed of that farm? 'The intention of the grantor must be gathered from the language he has seen fit to employ.' *Wilson* v. *Langhorne*, 102 Va. 631, 637 (1904).

"The language used by the grantor here is: 'To George R. Horne and C. R. Horne * * * for their lives then to their lawful children.'

"The grant in remainder is to 'their children' meaning the children of the two life tenants. The grant is not made to the children of C. R. Horne nor to the children of George R. Horne, but to the two brothers for their lives and 'then to their lawful children.'

"These words necessarily mean their respective children because no children could be the children of both brothers.

"*In re Hutchinson's Trust*, 21 Ch. Div. 811, 816 (1882), is strikingly applicable to the case at bar. There a testatrix bequeathed personal property in trust for E. S. for life, and after his death for his issue, and on failure of his issue to F. H. S. and R. S. share and share alike and after the decease of F. H. S. and R. S. to their children share and share alike, and to their heirs forever. E. S. died without issue. F. H. S. also died without issue. R. S. died leaving issue. The children of R. S. claimed the whole fund, it being contended that the bequest after the death of F. H. S. and R. S., who were brothers, was a gift to a class composed of the children of both, if both left children, or, if only one left children, to the children of that brother, and F. H. S. having died without issue that the whole fund belonged to the children of R. S.

"This contention was rejected by the court, which said: 'Now, what is the disposition? It is to their children. Well, following the decisions, and considerably assisted, I must say, by an argument which Mr. Hastings used, and which I adopt, that in that place this must mean their respective children, because there could not possibly be any child who could say I am the child of both, I am bound to read "after the death" as meaning "after the death of each" and "to their children" as "to their respective children" I admit the force of Mr. Hastings' argument on that part of the gift, and I think these authorities have laid down a rule of construction, which I am bound to follow; therefore, I so decide.'

"It was therefore held that the children of Robert Synge took only one moiety of the estate to be divided equally between them.

"To the same effect see also, *Arrow* v. *Mellish*, 1 De G. & Sm. 355 (1847); and *Wills* v. *Wills*, 4 L. Rep. 20, Eq. 342 (1875).

"In *Willes* v. *Douglas*, 10 Bevan 47 (1847), the testator gave his property in trust to be equally divided between M. J., C. L. and L. A., the interest arising therefrom to be equally divided share and share alike, between the said M. J., C. L. and L. A., separate from and distinct from their husbands, and for their sole use; and at their decease to be divided amongst their daughters. It was held that M. J., C. L. and L. A. each took one-third for life with remainder as to her one-third to her daughters, that is, the shares of the life tenants passed *per stirpes* to their respective daughters.

"In *Tarriere* v. *Peakes*, 2 Simon & Stuarts Rep. 383 (1825), the testator provided a legacy of 600 pounds to F. for life and at her death to her two daughters in equal shares and at their death to their children. One of the daughters died without children. It was held that the children of the other daughter did not take the whole 600 pounds, but only their mother's share. Sir John Leach, V. C., said: 'Here the children of each daughter must plainly take their mother's share upon her death; and there are no words which can carry one daughter's share to the surviving daughter or her children.'

"The English cases uniformly hold that the words 'their children,' when employed in gifts of future estates after life estates given to two or more brothers or sisters with re-mainder 'to their children,' invariably means to 'their respec-tive children' for the all sufficient reason that no child can possibly be the child of both brothers or sisters.

"The grantor in making the deed in question was, of course, aware of the fact that George R. Horne could not be the father of C. R. Horne's lawful children and likewise that C. R. Horne could not be the father of George R.

Horne's lawful children. It must, therefore, be concluded that in using the words 'to George R. Horne and C. R. Horne * * * for their lives, then to their lawful children,' he meant 'their respective lawful children,' and it is so held.

"This conclusion is fully supported by what was said by the Court of Appeals in *Johnson* v. *Kelly*, 171 Va. 153, 157 (1938). In that case the testator devised one-fifth part of his estate to each of two sons for their lives 'and at the death of my said sons Jefferson D. Kelly and William H. Kelly their shares to pass to their children or their descendants.' In construing another provision of the will it became necessary for the Court to consider and construe the quoted provision. In doing so, the court, speaking through Mr. Justice Eggleston, said: 'Moreover, in another portion of the paragraph under review, the testator has dealt with the children of Jefferson D. Kelly and the children of William H. Kelly as separate classes. He provides that upon the death of his sons, Jefferson and William, their shares of the property which he had devised to them for their respective lives should "pass to their children or their descendants," *which, of course, means that Jefferson's share should pass to his children, and that William's share should pass to the latter's children* * * * .' (Italics supplied.)

"Although the reason heretofore assigned is conclusive of the issue here, there is another well established reason why the children of C. R. Horne are not entitled as purchasers under the above mentioned deed to the remainder in that part of 'The Grove' given to George R. Horne. That reason is that the two life estates of Geo. R. Horne and C. R. Horne in 'The Grove' were not a joint estate in that plantation, but estates in separate and distinct parts of 'The Grove' certainly not less than life estates in common.

"In *Carneal* v. *Lynch*, 91 Va. 114, 117 (1895), it is said: 'Mr. Minor says: "A tenancy in common is where two or more hold the same land with interests accruing under the same title, but at different periods; or conferred by words of limitation importing that the grantees are to take

in distinct shares." 2 Minor's Insts. 494, citing 1 Stephen Com. 323.'

"It is evident from the terms of the deed that George R. Horne and C. R. Horne were given distinct shares in 'The Grove' and they so construed the deed by promptly establishing a line of partition between their respective parcels in accordance with the directions contained in the deed granting their life estates.

"It has been generally held that the fact that the will or deed creates life tenancies in common indicates an intent on the part of the testator or grantor that the remainders shall pass *per stirpes* and not *per capita*.

"Thus, in 2 Jarman on Wills (6th Am. Ed.), pp. 207-8, it is said: ' * * * The conclusion then depends in a great measure upon whether the tenants for life take jointly or as tenants in common. If the latter, then as the share of anyone will on his decease, go over immediately, without waiting for the other shares, it is probable that the testator intended it to continue separate and distinct from the other shares, and consequently, to devolve on the children *per stirpes*. If otherwise, then it would follow that the different shares would go to different classes of children; for after the ' death of the tenant for life who first died, another might have more children, who would be entitled to participate in a share of any tenant for life who died afterwards.'

"See also *Parker* v. *Glover*, 42 N. J. Eq. 559, 561-2 (1887).

"In *Taylor* v. *Fauver*, 2 Va. Dec. 555, 556, 28 S. E. 317 (1897), the will provided: 'The balance I will and bequeath to my sisters or their heirs equal to all.' The testator had several sisters who survived him and one sister who predeceased him leaving a number of children. The court held that the division should be *per stirpes*, and that the children of the deceased sister were entitled to the share which their mother would have taken had she been alive.

"See also *Johnson* v. *Kelly*, 171 Va. 153, 157 (1938).

"George R. Horne having died without issue the estates created by the above mentioned deed in his part of 'The Grove' have terminated.

"The contingency on the happening of which an estate in fee simple was granted therein never occurred and is now impossible of happening. Therefore, that part of 'The Grove' granted to George R. Horne for his life has reverted by operation of law" to the estate of the original grantor and has become vested under the residuary clause in the will of R. R. Horne.

*Affirmed.*